# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH and DYNAENERGETICS US, INC., <br><br>  Plaintiffs, <br><br> v. <br><br> GR ENERGY SERVICES OPERATING GP LLC; GR ENERGY SERVICES MANAGEMENT, LP; and GR ENERGY SERVICES, LLC, <br><br>  Defendants. | Civil Action No. 6:21-cv-00085-ADA |

## GR ENERGY'S REPLY IN SUPPORT OF ITS CLAIM CONSTRUCTION BRIEF

1

I.  **INTRODUCTION**

GR Energy Services Operating GP LLC; GR Energy Services Management, LP; and GR Energy Services, LLC (collectively, "GR Energy") respectfully file this reply brief in support of its opening claim construction brief and request the Court to adopt the proposed constructions provided below.

II. **DISPUTED CLAIM TERMS**

A.  **"first end" / "second end" (Claim 1)**

| GR Energy's Proposed Construction | Dyna's Proposed Construction |
|---|---|
| "first furthest part, point, or edge lengthwise" / "second furthest part, point, or edge lengthwise"<br><br>Alternatively, "[first/second] farthest or most extreme point"[1] | Plain and ordinary meaning |

Rather than conceding that the "end" of a bore, tandem seal adapter, or pressure bulkhead be the furthest part or point of each component, Dyna vaguely argues that an "end" encompasses *any* portion of a component that is "toward" one edge or the other. Dkt. 42, at 6. But Dyna has failed to provide any bounds for the ambiguous term "toward." At best, Dyna could argue that anything slightly beyond the midpoint of a component is "toward" the edge and therefore the "end." But just as GR Energy warned in its opening brief, this position conflates the clear meaning of "end" with broader terms used elsewhere in the patent, like "half" or "side." *See* Dkt. 39, at 3-4. Nairobi, which lies just south of the equator, may be in the southern *half* of the Earth, but it is not at the Earth's southern *end*. The third-quarter of a football game is played in the

---

[1] GR Energy's original proposed construction is not materially distinct from the alternative construction proposed by the defendants in the other related actions. Accordingly, GR Energy are amenable to the Court adopting the construction proposed by NexTier: "[first/second] farthest or most extreme part or point."

second *half*, but is not the *end* of the game. Dyna should not be permitted to use these distinct terms interchangeably.

Despite its unwillingness to proffer a competing construction, Dyna at least concedes that "end" refers "to a region or portion of a component that is toward one lengthwise edge, and includes such an edge." Dkt. 42, at 6. Notwithstanding the ambiguity of the word "toward," GR Energy is amenable to the Court adopting any construction that makes clear that the "end" must include the furthest part, point, or edge of a component. Any reasonable construction of "end" must include the literal end of the component, which is the furthest part, point, or edge.

### B. "pin connector" (claim 1)

| GR Energy's Proposed Construction | Dyna's Proposed Construction |
|---|---|
| "rigid male electrical contact" | Plain and ordinary meaning |

With respect to this term, the question before the Court is straightforward: what is the difference between a pin connector and a connector? Fundamental principles of claim construction require that the term "pin" be given some meaning. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("While not an absolute rule, all claim terms are presumed to have meaning in a claim."). Not every connector can be a pin connector. Otherwise the modifier "pin" would be rendered meaningless. GR Energy has provided a reasonable and well-supported construction that accords the term its full meaning. In view of the overwhelming intrinsic and extrinsic evidence, a person of skill in the art would understand that a pin connector is a rigid male electrical contact.

Rather than respond to the merits of GR Energy's argument, Dyna constructs a feeble, irrelevant strawman instead. Dyna argues that describing a pin connector as a rigid male contact "implies that there is a corresponding 'female' receptacle that receives the 'male' connector."

Dkt. 42, at 9-10. But as Dyna full well knows, GR Energy is not proposing that a "female receptacle" or "mated pair" limitation be read into the claim. As GR Energy's expert, Dr. Fayard explains, "male electrical connector[s]" such as pin connectors "are often configured to be received into a female electrical connector." Dkt. 39-1 ¶ 21. But there is a material distinction between describing a pin as a male connector configured to be received into a female receptor and proposing a construction requiring the presence of a female receptor. For the avoidance of any doubt, GR Energy is not advocating a construction requiring a female electrical receptor into which the male pin is connected. The dispute is not about what a pin can be connected to, it is a dispute about what a pin is. And Dyna has failed to offer even a single argument demonstrating that a pin is anything other than a rigid male electrical contact.

  Dyna's truncated response to this critical limitation fails to address nearly every point made in GR Energy's opening brief. For instance, Dyna does not dispute that not all connectors are pin connectors. Dyna does not dispute that a pin is not a female contact. Dyna does not dispute that a pin is not a wire contact. Dyna does not dispute that a pin is not a plate contact. Dyna does not dispute that a pin is not a crimped or soldered contact. Rather than join issue, Dyna clings to its plain and ordinary meaning proposal in the hopes of proceeding to trial, where it can argue that any kind of connector is a pin connector.

  Dyna also ignores the evidence from the specification that supports GR Energy's construction. Dyna does not address the specification's distinction between rigid pin connectors and other types of connectors, like wires, crimped connections, and "push-in" connectors. *See* '697 patent at 6:12-31; 8:13-15; Fig. 29; Fig. 31. Nor does Dyna deny that the connectors displayed prominently in Figure 32 (126A and 126B) are rigid male connectors. Despite its failure to address *any* of this intrinsic evidence, Dyna boldly argues that "nothing in the language

of the patent supports [GR Energy's] reading." Dkt. 42, at 10. But the patent is replete with evidence supporting GR Energy's reading. In fact, GR Energy provided the Court a detailed explanation of the intrinsic evidence that Dyna has left unrebutted.

What is more, Dyna largely concedes (perhaps unwittingly) that GR Energy's construction and intrinsic evidence discussion is correct. In conjunction with the final disputed term, "not possible to interrupt the electrical signal," Dyna notes that "an important and novel aspect of the claimed invention includes the ***short, stiff pin connector*** assembly claimed by the '697 Patent that is superior to the prior art teachings of wires that are vulnerable to cutting, crimping, or other damage." Dkt. 42, at 15 (emphasis added). This description is largely consistent with GR Energy's construction and highlights the distinction between a stiff or rigid pin and other non-male connectors like wires.

Dyna's faint-hearted response to the prosecution history disclaimer issue is similarly unpersuasive. In its opening brief, GR Energy explained in detail how Dyna amended claim 1 to add a "first pin connector end" that "extends beyond the first end of the pressure bulkhead" to avoid prior art that clearly disclosed flat electrical connectors that were not pin connectors. Dkt. 39, at 9-11. Incredibly, Dyna's responsive brief includes only three vacuous, conclusory sentences on this critical issue. Dyna does not dispute that its original claim language did not include pin connectors extending beyond the pressure bulkhead. Dyna does not dispute that the prior art contained flat electrical connectors. Dyna does not dispute that it amended its claim to add pin connectors to avoid this prior art and effectively argued that amendment to the examiner. Nor does Dyna dispute that the examiner allowed the claims based solely on that amendment. The dearth of a response is telling. These unrebutted facts establish a textbook case of prosecution history disclaimer that precludes Dyna from arguing that a pin connector is anything

other than a rigid male electrical connection. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).

Dyna also fails to muster a single piece of meaningful extrinsic evidence that supports its boundless interpretation of pin connector. Dyna's expert, Dr. Rodgers, makes only a single substantive point in his declaration: the claims do not "require[] the 'male' pin to be received by or paired with a 'female' component." Dkt. 42-3 ¶ 121. As explained above, however, this is not GR Energy's position. GR Energy is not proposing that the claimed pin connector must be paired with a female receptor. Rather, GR Energy proposes that a pin connector is a rigid male electrical contact. Like Dyna's brief, Dr. Rodgers' declaration sidesteps that actual dispute. Aside from Dr. Rodgers' misguided declaration, Dyna also fails to provide even a single dictionary definition that contravenes GR Energy's proposed construction. Certainly, if GR Energy's construction was as off-base as Dyna contends, there would be scores of technical and general dictionaries demonstrating that a pin connector is not limited to a rigid male connector. The absence of such extrinsic evidence speaks to the weakness of Dyna's position.

Accordingly, GR Energy respectfully requests that the Court construe "pin connector" to mean "rigid male electrical contact."

### C. "in electrical communication with" (claims 1 and 10)

| GR Energy's Proposed Construction | Dyna's Proposed Construction |
|---|---|
| "receiving information by electric signal"  Alternatively, "sending or receiving information by electric signal" | Plain and ordinary meaning |

The thrust of Dyna's argument is that "electrical communication" is synonymous with "electrical connection." Dyna explicitly states that electrical communication "simply means that there is an ability for an electrical signal to be transferred between components." Dkt. 42, at 11.

6

To accept Dyna's argument would be to accept that the patentee assigned the same meaning to two different terms used within the same claim. But controlling Federal Circuit case law dictates that courts must presume that "the use of different terms in the claims connotes different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000); *Helmsderfer v. Bobrick Washroom Equip.*, 527 F.3d 1379 (Fed. Cir. 2008) ("Our precedent instructs that different claim terms are presumed to have different meanings."). Dyna fails to even address this line of case law, much less distinguish it. But, by this point, Dyna's strategic trend is becoming obvious: rather than join issue with GR Energy, Dyna simply ignores inconvenient law and facts and retreats to "plain and ordinary meaning."

Dyna also attempts to obfuscate the prosecution history evidence. As originally drafted, the claims required only the transmission of an electrical signal between the detonator and pin connector assembly. After a rejection, Dyna amended its claims to emphasize the claimed detonator "is in electrical communication with the pin connector assembly." *See* Dkt. 39, at 13. In making this narrowing amendment, Dyna is presumed to have generally disclaimed "the territory between the original claim and the amended claim." *Festo*, 535 U.S. at 740.

In a transparent effort to elude its own disclaimer, Dyna now contends that the amendment was made to broaden—not narrow—the claim. Dkt. 42, at 11 ("The amendment…actually supports that the 'in electrical communication with' was intended to cover a broader action than receiving the electrical signal."). This is a curious argument. After facing a non-final rejection based on anticipation, patentees typically narrow their claims, not broaden them. But in any event, Dyna has failed to show how the transmission of an electrical communication is broader than the transmission of an electrical signal. Dyna has also failed to

demonstrate how an electrical communication (or, for that matter, any kind of communication) can occur without the transmission of information.

Dyna's final critique of GR Energy's proposal is that electrical communication should not include the directional limitation of "receive." This point is well taken. GR Energy agrees that, without further limiting language, electrical communications can encompass both sending and receiving information. To address this issue, GR Energy offers the revised alternative construction: "sending or receiving information by electric signal." With this concession, GR Energy requests the Court to adopt its proposed construction.

**D.      "connected to" (claim 1)**

| GR Energy's Proposed Construction | Dyna's Proposed Construction |
|---|---|
| "joined or coupled together" | "joined or coupled in a manner that resists separation and not merely by physical contact" |

Dyna says that by looking at the specification and prosecution history a person of skill in the art would understand "connected to" has some "industry usage," (Dkt. 42, at 13), but then provides not a single citation to any reference or particular language to support this contention. Actually, the '697 patent appears to invoke the term's normal and customary usage; for example, discussing how one end of a part "abuts/connects to" another (i.e., implying the parts could be merely physically joined and/or easily separated). '697 patent at 7:58–60; 56-2. Indeed, despite providing an expert declaration regarding the term, Dyna's expert, Dr. Rodgers, provides no evidentiary support that "connected to" has some industry definition.

Dyna argues that the term "connected to" should be imbued with the negative limitation "not merely by physical contact" to ensure that the connection seals. This argument is a non-sequitur, however, because there is a separate limitation requiring the tandem seal adapter to

"provide a seal." The sealing limitation obviously requires sealing. There is no basis to conflate these two distinct claim limitations by adopting Dyna's proposed negative limitation. Dyna's insistence on a negative limitation should be rejected, and GR Energy's more straightforward construction should be adopted.

    E.    **"not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (claim 2)**

| GR Energy's Proposed Construction | Dyna's Proposed Construction |
|---|---|
| indefinite | Plain and ordinary meaning |

Dyna first argues that its plainly indefinite negative limitation should be given a pass because it is "functional" claim language. Dkt. 42, at 15. This limitation is not a functional limitation. A claim term is functional when it recites a feature "by what it does rather than by what it is." M.P.E.P. § 2173.05(g) (internal citations and quotations omitted). And functional language is generally the province of means-plus-function terms under 35 U.S.C. § 112(f). Here, the disputed claim term is neither functional nor within a means-plus-function limitation. Instead, it is a curious negative limitation that requires a lack of functionality and demands absolute impossibility.

In an attempt to salvage an obviously indefinite claim, Dyna attempts to rewrite the limitation to recite a "portless tandem seal adapter that does not allow access to the pressure bulkhead and pin connector assembly." Dkt. 42, at 16. Unfortunately for Dyna, it is stuck with the claim as drafted, not as it could have been drafted. Dyna did not claim an electrical connection assembly that cannot be accessed; it claimed an electrical connection assembly that cannot be interrupted. And the terms "access" and "interrupt" are not interchangeable. In fact, the

9

specification fails to mention or describe the term "access." The Court should not grant Dyna leave to amend its poorly drafted claim during the claim construction process.

Dyna's final argument is that the term is not indefinite because the examiner understood it enough to allow it after an anticipation rejection. Dyna provides no legal authority for this argument. But more problematically, if the Court were to adopt Dyna's argument, then no claim that an examiner understood enough to allow could be found indefinite in district court proceedings. That is obviously not the law.

### III. CONCLUSION

For the foregoing reasons, GR Energy respectfully requests that the Court adopts its proposed claim constructions.

Dated: November 22, 2021

By: /s/ Aimee P. Fagan
Aimee P. Fagan, Lead Counsel
Texas State Bar No. 24010299
afagan@sidley.com
Phillip M. Aurentz
Texas State Bar No. 24059404
paurentz@sidley.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

**ATTORNEYS FOR DEFENDANTS GR ENERGY SERVICES OPERATING GP LLC; GR ENERGY SERVICES MANAGEMENT, LP; and GR ENERGY SERVICES, LLC**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically on November 22, 2021. As such, this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

                                                */s/ Aimee P. Fagan*
                                                Aimee P. Fagan