# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br><br> GR ENERGY SERVICES OPERATING GP LLC, GR ENERGY SERVICES MANAGEMENT, LP, and GR ENERGY SERVICES, LLC <br> Defendant. | Civil Action No: 6:21-cv-00085-ADA |

**DYNAENERGETICS EUROPE GMBH AND DYNAENERGETICS US, INC.'S
SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. "first end" / "second end" (asserted claim 1) .......................................................... 2

    B. "pin connector" (asserted claim 1) ........................................................................... 3

    C. "in electrical communication with" (asserted claims 1 and 10) ............................. 5

    D. "connected to" (asserted claim 1) ............................................................................ 6

    E. "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (asserted claim 2) ....................... 7

III. CONCLUSION .................................................................................................................. 9

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") submit this Sur-Reply Claim Construction Brief in support of their proposed construction for a disputed term of the asserted patent as well as addressing terms that defendants GR Energy Services Operating GP LLC, GR Energy Services Management, LP, and GR Energy Services, LLC (collectively, "GR Energy") have proposed for construction.

## I. INTRODUCTION

The '697 Patent defendants revised their proposed constructions mid-way through the claim construction <u>briefing</u> (not prior to submission of the JCCS) in order to "harmonize" their proposed constructions. Putting aside the impropriety of such a belated revision, the fact that defendants could not (and for some terms, still do not) agree on a single construction for the disputed claim terms demonstrates the weakness of their positions. As Judge Lake in the Southern District of Texas recognized for the '938 Patent,[1] the '697 Patent does not use highly technical language or terms of art that would be difficult for a lay jury to understand. The claims utilize little, if any, technical jargon and are written in plain English. Yet GR Energy and the other defendants propose to construe a large number of terms, and they present complicated interpretations in an effort to aid their own non-infringement and invalidity theories, not to help the jury or this Court. For the single term that DynaEnergetics proposes for construction, "connected to," DynaEnergetics is forced to propose a construction that is consistent with how a POSITA would understand the intrinsic record because of defendants' attempt to improperly stretch the scope of the prior art to fit their invalidity position.

---

[1] U.S. Patent No. 10,472,938 (the "'938 Patent") was asserted in *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, Civil Action No. 4:20-cv-02123 (S.D. Tex). Ex. L, *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, No. CV H-20-2123, 2021 WL 5494932, at *8 (S.D. Tex. Nov. 23, 2021) (the "'938 Patent Markman Decision") The '697 Patent is a continuation from the '938 Patent and shares the same specification.

1

The Court should reject GR Energy's and the other defendants' unnecessary and unhelpful claim construction proposals and should give the disputed claim terms their plain and ordinary meanings consistent with DynaEnergetics' positions.

## II. ARGUMENT

### A. "first end" / "second end" (asserted claim 1)

| DynaEnergetics' Construction | GR Energy's Construction | Defendants' Revised "Harmonized" Construction |
|---|---|---|
| No construction needed; plain and ordinary meaning | "first furthest part, point, or edge lengthwise" / "second furthest part, point, or edge lengthwise" | "[first/second] farthest or most extreme part or point." |

In its reply, GR Energy lists a number of unrelated examples regarding an "end" or a "half" in support of its construction that are simply irrelevant to the context of the '697 Patent. The appropriate inquiry is not differentiating between an "end" and a "half," it is whether GR Energy has shown that DynaEnergetics clearly and unambiguously disclaimed or disavowed claim scope in the specification, such that the plain and ordinary meaning of "end" in the context of the '697 Patent should be narrowly limited to GR Energy's proposed construction. *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("There are only two exceptions to this general rule [that terms should be given their plain and ordinary meaning]: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."). On that front, GR Energy falls far short of what the law requires. Indeed, GR Energy provides no analysis of any disavowal or disclaimer from DynaEnergetics to support why "end" should not be given its plain and ordinary meaning.

GR Energy also failed to offer any substantive rebuttal to DynaEnergetics' arguments that GR Energy's proposed construction "[first/second] farthest or most extreme part or point" makes

no sense in the context of the claims and only introduces confusion and ambiguity. First, though the '697 Patent claims require that the first outer gun carrier be "connected to the *first end* of the tandem seal adapter," GR Energy failed to explain how an outer gun carrier is not able to connect to the "farthest or most extreme part or point" of the tandem seal adapter, as shown by the disclosed embodiments. *See* Dkt. 42 at 7. Second, GR Energy and defendants failed to address the fact that the adjective "farthest or most extreme part or point," immediately after the terms "first" and "second" adds needless confusion to a jury. Referring to the "first farthest" and "second farthest" part or point could be understood to refer to elements on the same end of the tandem seal adapter instead of the opposite ends. Dkt. 42-3 ¶ 77. Accordingly, the Court should reject GR Energy's proposed construction and instead hold that "first end" and "second end" is subject to its plain and ordinary meaning.

### B. "pin connector" (asserted claim 1)

| DynaEnergetics' Construction | GR Energy's Construction |
|---|---|
| No construction needed; plain and ordinary meaning | "rigid male electrical contact" |

GR Energy paints a melodramatic narrative that DynaEnergetics will attempt to argue that "any kind of connector is a pin connector," unless a specific construction is provided for the term "pin connector." Dkt. 45 at 4. But this is a strawman argument. A POSITA would readily understand that the plain and ordinary meaning of "pin connector" in the context of the claims and specification of the '697 Patent does not encompass all connectors. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). Furthermore, GR Energy appears to agree that the specification of the '697 Patent provides adequate descriptions

and examples that would allow a POSITA to understand the plain and ordinary meaning of "pin connector." *See* Dkt. 45 at 4-5. From reading the specification, a POSITA would understand that a "pin connector" is not a wired contact, or a plate contact, or a crimped or soldered contact. *Id*.

But GR Energy again fails to meet its burden to demonstrate any "clear and unmistakable" disavowal or disclaimer of claim scope that would limit the plain and ordinary meaning of "pin connector" to its proposed construction. *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). GR Energy argues that the amendment of claim 1 to add the limitation that the "pin connector end" must "extend[] beyond the [first / second] end of the pressure bulkhead" constitutes prosecution history disclaimer but fails to show how that amendment constitutes "unequivocal disavowal of claim scope" at all, especially a disavowal that compels its proposed construction. *Id*. This prosecution history amendment simply adds a limitation to the express language of claim 1. Thus, there is no disavowal or disclaimer of scope related to the "pin connector end" itself.

Furthermore, GR Energy appears to admit that its proposed construction contains redundant terms. Because "GR Energy is not advocating a construction requiring a female electrical receptor into which the male pin is connected," Dkt. 45 at 4, then the inclusion of the gendered term "male" in GR Energy's proposed construction is entirely superfluous and unnecessarily confusing to the lay jury who does not know that a female receptor is not required with the male pin. *See* Dkt. 42-3 ¶¶ 120-21; *see Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07CV171, 2009 WL 2026317, at *8 (E.D. Tex. July 6, 2009) ("[W]here additional language may be unduly limiting, confusing, or redundant, it is in a court's power to determine that no construction is necessary."). Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Accordingly, the Court

should reject GR Energy's proposed construction and instead hold that "pin connector" is subject to its plain and ordinary meaning.

### C. "in electrical communication with" (asserted claims 1 and 10)

| DynaEnergetics' Construction | GR Energy's Construction | GR Energy's Revised Construction |
|---|---|---|
| No construction needed; plain and ordinary meaning | "receiving information by electric signal" | "sending or receiving information by electric signal" |

The fact that GR Energy and the other '697 Patent defendants cannot agree on a proposed construction for "in electrical communication with"—or even whether this term needs construction—confirms that no construction is actually needed. Moreover, GR Energy conceded that DynaEnergetics' arguments were "well taken" and its proposed construction for this term was unduly narrow, and consequently revised its proposed claim construction for this term mid-way though claim construction briefing. Dkt. 45 at 8.

However, GR Energy continues to stretch its interpretation of the prosecution history in order to find support for its newly-revised construction. GR Energy argues that the patentee made a "narrowing amendment" in the prosecution history, while conveniently disregarding the fact that the prosecution history decidedly shows that the claim language "in electrical communication with" is broader than transmitting an electrical signal because it was used to cover both being "in electrical contact with," in addition to being "configured to receive an electrical signal." *See* Dkt. 42 at 11-12. GR Energy's only rebuttal to this argument is its assumption that "patentees *typically* narrow their claims, not broaden them," during the prosecution. Dkt. 45 at 7 (emphasis added). But that assumption simply does not hold in this case, and, by definition, it does not come close to satisfying GR Energy's the burden to show that there was "clear and unmistakable" disavowal

5

limiting the plain and ordinary meaning of "in electrical communication with." *Cordis Corp.*, 511 F.3d at 1177.

GR Energy also appears to ask the Court to determine whether the term "in electrical communication with" or the (not disputed) term "electrical connection" is broader or narrower than the other. Dkt. 45 at 6-7. But this exercise is meaningless and not necessary to determine that no construction is needed for the disputed term for the reasons stated above and in DynaEnergetics' Responsive Brief (Dkt. 42 at 11-12). Accordingly, the Court should reject GR Energy's proposed construction and instead hold that "in electrical communication with" is subject to its plain and ordinary meaning.

### D.  "connected to" (asserted claim 1)

| DynaEnergetics' Construction | GR Energy's Construction |
|---|---|
| Plain and ordinary meaning, which is "joined or coupled to, in a manner that resists separation and not merely by physical contact" | "joined or coupled together" |

While DynaEnergetics acknowledges that the plain and ordinary meaning of the term "connected to" may appear readily understandable to a lay jury, DynaEnergetics is forced to propose this specific claim construction for "connected to," based on the defendants' attempt to stretch a prior art reference to suit their invalidity positions. Specifically, GR Energy and other defendants have relied upon prior art references in which a component was merely held or positioned between two other components, without any physical connection or formation of a seal, and argued that such an arrangement satisfied the "connected to" limitation. *See* Ex. M, GR Energy's Preliminary Invalidity Contentions, at 8; Dkt. 44-4 at 43. As explained in DynaEnergetics' Responsive Brief, a POSITA would understand that the claimed tandem seal adapter needs to be "connected to" the first outer gun carrier in a manner that is ***sufficiently secure*** as to provide a seal between an interior of the first outer gun carrier (*i.e.*, as recited by claim 1,

6

"the first detonator [is] positioned within the first outer gun carrier") and the second end of the tandem seal adapter. *See* Dkt. 42 at 13-14 (citing Dkt. 42-3 ¶¶ 71-72).

Furthermore, though GR Energy points to portions of the specification unrelated to the tandem seal adapter "connected to" the outer gun carrier but discussing how one end of another part may "abut[]/connect[] to" another, the actual claim language shows that the term "connected to" should be understood to be a more secure coupling than something that is merely touching or "abutting," which is used in claim 19 to refer to "a biasing member positioned within the pressure bulkhead and *abutting* the pin head portion of the inner contact pin." '697 Patent at 14:6-8; *Digit. Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *8 (W.D. Tex. Jan. 23, 2020) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms." (alteration in original) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004))). A POSITA would recognize that the term "connected to" is used in reference to a sufficiently secure connection between the tandem seal adapter and the first outer gun carrier to form a seal, whereas the term "abutting" is used by the patent when referring to something that simply needs to touch or fit together.

Thus in the context of the '697 Patent, a POSITA would understand the term "connected to" to mean "joined or coupled in a manner that resists separation and not merely by physical contact" and accordingly, the Court should adopt DynaEnergetics' position.

**E. "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" (asserted claim 2)**

| DynaEnergetics' Construction | GR Energy's Construction |
|---|---|
| No construction needed; plain and ordinary meaning | Indefinite |

7

In order to support its indefiniteness position, GR Energy continues to mischaracterize DynaEnergetics' arguments. DynaEnergetics is not arguing that the term "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" should be construed as a means-plus-function term. DynaEnergetics cited to *Nevro Corp. v. Bos. Sci. Corp.* in its Responsive Brief to show where the Federal Circuit held that the term "paresthesia-free" was not indefinite because "a skilled artisan would be able to quickly determine whether a signal creates paresthesia for any given patient." 955 F.3d 35, 40 (Fed. Cir. 2020). Similarly, here a POSITA would be able to quickly determine whether it is possible to interrupt the electrical signal due to the presence of a port and/or wired connections that may be prone to damage, disconnection, or wiring mistakes. *See* Dkt. 42-3 ¶¶ 100-05; *see also* '697 Patent at 11:18-47. A POSITA would recognize that the improvements taught by the '697 Patent provide reasonable certainty about the claimed inventions' scope—which is that it would not be possible to interrupt the electrical signal from the first pin connector end to the second pin connector end in the same manner one could with wired connections, due to the portless tandem seal adapter that does not allow access to the pressure bulkhead and pin connector assembly. *See id.* ¶¶ 107-08. As explained in DynaEnergetics' Responsive Brief, the materials, assembly, and electrical concepts disclosed in the '697 Patent, in addition to the common knowledge in the industry, provide "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine the scope of the claims." *Nevro Corp.*, 955 F.3d at 39 (citation omitted); *see also* Dkt. 42-3 ¶¶ 99-105, 107-08. On the other hand, GR Energy's argument is based on clearly unrelated notions of electrical connections being broken or failing generally—e.g., due to faulty connections—while ignoring the clear support for the invention in the claim and specification.

Furthermore, DynaEnergetics is not asserting that every claim allowed by an examiner is not indefinite. However, the fact that the prosecution history unmistakably shows that the examiner was clearly able to recognize the definite scope of the functional limitation, "it is not possible to interrupt the electrical signal," provides clear support and evidence that a POSITA would understand the teaching in the '697 Patent as providing the proper basis and scope for the limitation "it is not possible to interrupt the electrical signal." Accordingly, the Court should find that this limitation is not indefinite.

## III.   CONCLUSION

For the reasons set forth herein, DynaEnergetics respectfully requests that the Court reject GR Energy's proposed constructions and adopt DynaEnergetics' proposed constructions.

Dated: December 6, 2021	Respectfully submitted,

By: _/s/ Eric H. Findlay_____
Eric H. Findlay
Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Mark D. Siegmund
Texas Bar No. 24117055
STECKLER WAYNE COCHRAN CHERRY, PLLC
8416 Old Mcgregor Road
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689
Email: mark@swclaw.com

Barry J. Herman (admitted *pro hac vice*)
Maryland Federal Bar No. 26061
Stephanie M. Nguyen (admitted *pro hac vice*)
DC Bar No. 1046300
Julie C. Giardina (admitted *pro hac vice*)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5873
Email: Stephanie.Nguyen@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (admitted *pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (admitted *pro hac vice*)
Georgia Bar No. 874494
WOMBLE BOND DICKINSON (US) LLP

271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com
Telephone: (404) 962-7538
Christine.Dupriest@wbd-us.com

Lisa J. Moyles (admitted *pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (admitted *pro hac vice*)
New York Bar No. 4450953
MOYLES IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

***Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.***

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

   /s/Eric H. Findlay
   Eric H. Findlay